Slip Op. 21 – 79

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| DONG-A STEEL COMPANY,<br><br>Plaintiff,<br><br>and<br><br>KUKJE STEEL CO., LTD.,<br><br>Consolidated Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant,<br><br>and<br><br>INDEPENDENCE TUBE CORPORATION, SOUTHLAND TUBE, INCORPORATED, ATLAS TUBE, and SEARING INDUSTRIES,<br><br>Defendant-Intervenors. | Before: Gary S. Katzmann, Judge<br>Consol. Court No. 19-00104 |

**OPINION**

[The court affirms Commerce's Remand Results.]

Dated: June 24, 2021

Jarrod M. Goldfeder and Robert G. Gosselink, Trade Pacific, LLP, of Washington, D.C. for plaintiff and consolidated plaintiff.

Robert Kiepura, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C. for defendant. With him on the brief were Brian M. Boynton, Acting Assistant Attorney General, Jeanne E. Davidson, Director and Tara K. Hogan, Assistant Director. Of counsel was Vania Wang, Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, D.C.

Robert E. DeFrancesco, III, Alan H. Price, and Jake R. Frischknecht, Wiley Rein LLP, of Washington, D.C., for defendant-intervenor, *Nucor Tubular Products Inc.*[1]

Roger B. Schagrin, Wiley Rein LLP, of Washington, D.C. for defendant-intervenors *Atlas Tube* and *Searing Industries*.

      Katzmann, Judge: The court returns to a challenge to Commerce's determination that Korean producers of heavy walled rectangular welded carbon steel pipes and tubes ("HWR") sold their product in the United States at below normal value in their home market, resulting in the imposition of antidumping ("AD") duties. Before the court is Commerce's Final Results of Redetermination Pursuant to Court Remand (Dep't Commerce Dec. 22, 2020), ECF No. 70 ("Remand Results"), which the court ordered in Dong-A Steel Co. v United States, 44 CIT __, 475 F. Supp. 3d 1317 (2020) ("Dong-A Steel I"), so that Commerce could further explain its determination in Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes from the Republic of Korea, 84 Fed. Reg. 24,471 (Dep't Commerce May 28, 2019), P.R. 244 ("Final Results"). On remand, Commerce determined under respectful protest that no particular market situation ("PMS") existed during the period of review ("POR"), and thus that no PMS adjustment should be applied to the cost of production ("COP") for calculation of the weighted-average dumping margin for Plaintiff Dong-A Steel Company ("DOSCO"). Remand Results at 4, 7. Accordingly, Commerce calculated an 11.00 percent weighted-average dumping margin for DOSCO and recalculated a 7.89 percent review-specific average rate for Consolidated-Plaintiff Kukje Steel ("Kukje").[2] Id. at 7. DOSCO requests that the court sustain Commerce's Remand

---

[1] Independence Tube Corp. and Southland Tube, Inc., both listed Defendant-Intervenors to this action, have been fully incorporated and subsumed into Defendant-Intervenor Nucor Tubular Products Inc. Accordingly, they are not separately represented and submit no separate briefing.

[2] Both DOSCO and Kukje are Korean HWR manufacturers. Broadly speaking, HWR are carbon steel pipes and tubes that are suitable, among other purposes, for the construction of offshore structures, owing to their strength and ability to accommodate a variety of structural shapes. The

Results. Pl.'s Cmts. on Remand Redetermination at 2, Jan. 21, 2021, ECF No. 73 ("Pl.'s Br."). Kukje, however, challenges Commerce's Remand Results on the basis that its assigned review-specific rate improperly incorporates the original PMS-adjusted weighted-average dumping margin as applied to HiSteel Co., Ltd. ("HiSteel"), a Korean HWR manufacturer selected by Commerce as a mandatory respondent but not participating in this litigation. Consol.-Pl.'s Cmts. on Remand Redetermination at 2–3, Jan. 21, 2021, ECF No. 74 ("Consol.-Pl.'s Br."). Defendant the United States ("Government") requests that the court sustain Commerce's Remand Results. Def.'s Resp. to Cmts. on Remand Redetermination at 1, Feb. 22, 2021, ECF No. 77 ("Def.'s Br."). Defendant-Intervenor Nucor Tubular Products, Inc. ("Nucor") objects to Commerce's Remand Results on the basis that the court should reject both its conclusions in Dong-A Steel I and Commerce's determination on remand and affirm Commerce's original PMS adjustment to the COP. Def.-Inter.'s Cmts. on Remand Redetermination at 1, Jan. 21, 2021, ECF No. 72 ("Def.-Inter.'s Br."). Defendant-Intervenors Atlas Tube and Searing Industries declined to comment on the Remand Results. The court concludes that Commerce's determinations on remand were in accordance with law and the court's remand instructions and affirms Commerce's Remand Results.

**BACKGROUND**

The court set out the relevant legal and factual background of the proceedings in further detail in its previous opinion, Dong-A Steel I. 475 F. Supp. 3d at 1322–30. Information relevant to the instant opinion is set forth below.

---

nature of the subject merchandise is set out in more detail in the court's previous opinion, Dong-A Steel I. See 475 F. Supp. 3d at 1321 n.1.

On September 1, 2017, Commerce published a notice of opportunity to request review of an order for HRW pipe and tube from Korea for the period covering March 1, 2016, to August 31, 2017. Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity to Request Administrative Review, 82 Fed. Reg. 41,595, 41,596 (Dep't Commerce Sept. 1, 2017), P.R. 3; Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes from the Republic of Korea, Mexico, and the Republic of Turkey: Antidumping Duty Orders, 81 Fed. Reg. 62,865, 62,866 (Dep't Commerce Sept. 13, 2016). Following requests from domestic producers of HWR (including Nucor, both individually and as Independence Tube Corp. and Southland Tube, Inc.; Atlas Tube, a division of Zekelman Industries; and Searing Industries) (collectively, "Petitioners"), as well as from DOSCO and HiSteel, Commerce commenced its 2016–2017 administrative review of the Order on November 13, 2017. See Initiation of Antidumping and Countervailing Duty Administrative Reviews, 82 Fed. Reg. 52,268 (Dep't Commerce Nov. 13, 2017), P.R. 5; Mem. from J. Maeder to G. Taverman, re: Decision Mem. for the Prelim. Results at 2 n.3 (Dep't Commerce Oct. 3, 2018), P.R. 203 ("PDM"). For this review, Commerce selected DOSCO and HiSteel as mandatory respondents. See Mem. from A. Wood to M. Skinner, re: Selection of Resp't for Individual Review (Jan. 12, 2018), P.R. 16.

As part of their submissions, Petitioners argued that there existed a PMS in Korea that distorted the COP of Korean HWR and highlighted four factors in support of this allegation.[3] Letter from Wiley Rein LLP to Sec'y Commerce, re: Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes from the Republic of Korea: Particular Market Situation Allegation and Supporting Information (Aug. 31, 2018), P.R. 160 ("Petitioners' PMS Allegation"). In its preliminary results, Commerce analyzed Petitioners' four factors and determined that the "totality

---

[3] Petitioners' arguments are discussed in detail in Dong-A Steel I. 475 F. Supp. 3d at 1326.

of the circumstances" indicated the existence of a PMS in Korea during the POR. PDM at 13; see generally Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes from the Republic of Korea: Preliminary Results of Antidumping Duty Administrative Review and Preliminary Determination of No Shipments; 2016–2017, 83 Fed. Reg. 50,892 (Dep't Commerce Oct. 10, 2018), P.R. 211. Accordingly, Commerce adjusted DOSCO's reported input costs to reflect the PMS. Id. at 20. After responsive briefing from Petitioners, DOSCO, and HiSteel, Commerce issued its Final Results in May 2019. Final Results; see also Mem. from G. Taverman to J. Kessler, re: Issues and Decision Mem. for the Final Results of the 2016–2017 Administrative Review of the Antidumping Duty Order on Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes from the Republic of Korea (Dep't Commerce May 20, 2019), P.R. 237 ("IDM"). In its Final Results, Commerce sustained its earlier determination that a PMS existed with respect to the input costs for HWR from Korea and calculated revised weighted-average dumping margins for both DOSCO and HiSteel incorporating the PMS adjustment. IDM at 3. Specifically, Commerce calculated a weighted-average dumping margin of 20.79 percent for DOSCO and 4.74 percent for HiSteel and applied a review-specific average rate of 12.81 percent to twelve additional companies -- among them, Kukje. Final Results, 84 Fed. Reg. at 24,472.

DOSCO initiated this litigation on June 25, 2019, challenging the portions of Commerce's Final Results pertaining to the calculation and adjustments of its weighted-average dumping margin and the additional review-specific rates.[4] Summons, ECF No. 1; Compl. at 6, ECF No. 6. Kukje commenced a separate action against the Government to challenge Commerce's final determination, filing a summons and complaint on June 25, 2019. Kukje's Summons, Kukje v.

---

[4] Many citations are to confidential filings for clarity in explaining the timeline of events. Public versions, often filed at later dates, are available on the public docket with corresponding pagination.

United States, No. 19-105 (CIT filed June 25, 2019), ECF No. 1; Kukje's Compl., Kukje, No. 19-105, ECF No. 6. On August 5, 2019, the court granted consent motions to allow Defendant-Intervenors Atlas Tube, Searing Industries, and Nucor to intervene in both cases. Kukje, No. 19-105, ECF Nos. 28, 29; Ct. Orders Granting Consent Mot. to Intervene as Def.-Inter., ECF Nos. 23, 24. On August 6, 2019, the parties filed a motion to consolidate Kukje's action (No. 19-105) with the lead case brought by DOSCO. Joint Mot. to Consol. Cases, ECF No. 25. The court granted the motion on August 13, 2019. ECF No. 26. On September 29, 2020, the court concluded that "Commerce's PMS determination was not supported by substantial evidence" and that Commerce further "applied an impermissible interpretation of section 504 of the TPEA" by disregarding the plain meaning of the statute and applying the PMS adjustment in its calculation of COP. Dong-A Steel I, 475 F. Supp. 3d at 1332. Accordingly, the court remanded the Final Results to Commerce for further explanation of the PMS determination and, if applicable, recalculation of the PMS adjustment made to COP and resultant AD rates. Id. at 1350.

Commerce filed its Remand Results on December 22, 2020, concluding under respectful protest that there is "insufficient evidence of a PMS that distorts the COP of HWR." Remand Results at 1. Consequently, it "recalculated the estimated weighted-average dumping margin for DOSCO without applying a PMS adjustment to the COP." Id. Commerce further recalculated the review-specific average rate applicable to Kukje to incorporate DOSCO's recalculated dumping margin, but without changes to HiSteel's original PMS-adjusted dumping margin. Plaintiff DOSCO, Consolidated-Plaintiff Kukje, and Defendant-Intervenor Nucor each filed comments on the Remand Results on January 21, 2021. Pl.'s Br.; Consol.-Pl.'s Br.; Def.-Inter.'s Br. The Government replied in support of Commerce's redetermination on February 22, 2021. Def.'s Br. Also on February 22, 2021, DOSCO and Kukje (together, "Plaintiffs") jointly replied in opposition

to Nucor's comments on the Remand Results. Reply of Pl. and Consol. Pl. to Def.-Inter.'s Br., ECF No. 78 ("Pls.' Reply").

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c). The standard of review in this action is set forth in 19 U.S.C. § 1516a(b)(1)(B)(i): "[t]he court shall hold unlawful any determination, finding or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." The court also reviews the determinations pursuant to remand "for compliance with the court's remand order." See Beijing Tianhai Indus. Co. v. United States, 39 CIT __, __, 106 F. Supp. 3d 1342, 1346 (2015) (citations omitted).

## DISCUSSION

A PMS is any circumstance that "prevents a proper comparison" between a product's normal value and its export price. See 19 U.S.C. § 1677b(a)(1)(B)(ii)(III). Where a PMS exists "such that the cost of materials and fabrication or other processing of any kind does not accurately reflect the [COP] in the ordinary course of trade," Commerce is authorized to estimate constructed value using alternative calculation methodologies, rather than relying upon "the price at which the foreign like product is first sold (or, in the absence of a sale, offered for sale) for consumption in the exporting country" or "the price at which the foreign like product is so sold (or offered for sale) for consumption in a country other than the exporting country or the United States." 19 U.S.C. § 1677b(a)(1)(B)(i)–(ii), (e)(3). This process involves the application of PMS-specific adjustments to Commerce's calculation of constructed value. 19 U.S.C. § 1677b(e); see also Dong-A Steel I, 475 F. Supp. 3d at 1324.

In its previous opinion, the court determined that Commerce is not permitted by statute "to make PMS adjustments outside the scope of a price-to-constructed value calculation." Dong-A Steel I, 475 F. Supp. 3d at 1340 (citing Saha Thai Steel Pipe Public Co. v. United States, 43 CIT __, __, 422 F. Supp. 3d 1363, 1368 (2019)). Rather, the court determined that the plain meaning of the statute provides only for adjustments when calculating an AD margin based on price-to-constructed value comparisons. Id. at 1339–41. Accordingly, the court declined to affirm Commerce's application of PMS adjustments to the COP in its Final Results. Id. at 1337–41; IDM at 3.

Also in its previous opinion, the court rejected Commerce's determination that a PMS existed with respect to HWR input costs such that the COP of HWR in Korea was distorted during the POR. Dong-A Steel I, 475 F. Supp. 3d at 1336–37. The court noted that "Commerce, by its own admission . . . , relied on substantially the same record evidence in reaching its PMS determination here" that the court had previously found to be insufficient in Nexteel Co v. United States, 43 CIT __, 355 F. Supp. 3d 1336 (2019); Nexteel Co. v. United States, 43 CIT __, 392 F. Supp. 3d 1276 (2019); and Hyundai Steel Co. v. United States, 43 CIT __, 415 F. Supp. 3d 1293 (2019). Id. at 1336. As a result, the court determined that Commerce's calculations of PMS-adjusted AD duty rates of 20.79 percent for DOSCO and 12.81 percent for Kukje were unsupported by substantial evidence. Id. at 1321, 1336–37. Accordingly, the court remanded for further review and explanation both Commerce's PMS determination and its calculation of the weighted-average dumping margin and associated review-specific average rate. Id. at 1321, 1350.

On remand, Commerce determined under respectful protest that the record did not support the existence of a PMS with respect to the COP of HWR "in a manner that would address all of the [c]ourt's concerns" with respect to the Final Results. Remand Results at 4. As a result,

Commerce found that "a PMS distorting the COP of HWR did not exist during [the POR]," and did not apply a PMS adjustment in its recalculation of DOSCO's weighted-average dumping margin. Id. at 4–5. It therefore determined a weighted-average dumping margin for DOSCO of 11.00 percent and an review-specific average rate for Kukje of 7.89 percent. The latter rate constituted a weighted average of the recalculated DOSCO rate and the original PMS-adjusted HiSteel rate, calculated pursuant to 19 U.S.C. § 1673d(c)(5)(A).[5]

### I.   The Court Affirms Commerce's PMS Determination and Calculation of DOSCO's Weighted-Average Dumping Margin

Plaintiffs and the Government request that the court affirm Commerce's determination that "a PMS distorting the COP of HWR did not exist during [the POR]."[6] Remand Results at 4–5; Pl.'s Br. at 2; Consol.-Pl.'s Br. at 2; Def.'s Br. at 5–7. While Defendant-Intervenor Nucor contests Commerce's PMS determination on remand, Nucor provides no support for its argument that a PMS existed during the relevant period that was not previously considered, and rejected, by the court in Dong-A Steel I.[7] Compare Def.-Inter.'s Br. at 2–4, 18 with Dong-A Steel I, 475 F. Supp. 3d at 1332–1341. The court concludes that, by reconsidering the record evidence and determining

---

[5] The subsection provides specifically that "the estimated all-others rate shall be an amount equal to the weighted average of the estimated weighted average dumping margins established for exporters and producers individually investigated, excluding any zero and de minimis margins, and any margins determined entirely under [19 U.S.C. § 1677e]."

[6] Although the Government does not contest Commerce's determination, it notes that "[b]y complying with the court's order under protest, Commerce preserves for appeal the arguments and positions it presented in the final determination and . . . Remand Results." Def.'s Br. at 6 (quoting Jinko Solar Co. v. United States, 42 CIT __, __, 317 F. Supp. 3d 1314, 1321 n.12 (2018)).

[7] Indeed, it is Nucor's position that "the court has impermissibly narrowed the scope of the PMS statute, and inappropriately limited Commerce's discretion in utilizing the statute." Def.-Inter.'s Br. at 5. For the reasons set forth in Dong-A Steel I, the court disagrees. 475 F. Supp. 3d 1332–37. As the arguments made by Nucor were already addressed and rejected in the court's previous opinion, the court declines to reach Plaintiffs' argument that Nucor failed to exhaust its administrative remedies on remand. Pls.' Reply at 4.

that a PMS did not exist during the POR, Commerce complied with the court's remand order in Dong-A Steel I and acted both in accordance with law and with the support of substantial evidence. Accordingly, the court sustains Commerce's PMS determination.

Similarly, Plaintiffs and the Government request that the court affirm Commerce's determination of an 11.00 percent weighted-average dumping margin for DOSCO.[8]  Pl.'s Br. at 2; Pls.' Reply at 2; Def.'s Br. at 6.  As the Remand Results indicate, the 11.00 percent rate was calculated by Commerce "without making the PMS adjustment to the COP" in accordance with its revised determination that no PMS existed during the POR.  Remand Results at 7.  The court concludes that by recalculating DOSCO's weighted-average dumping margin without PMS adjustments, Commerce complied with the court's remand order.  See Dong-A Steel I, 475 F. Supp. 3d at 1350.  The court further concludes that the revised AD rate assigned to DOSCO should be sustained as supported by substantial evidence and in accordance with law.

## II.     The Court Affirms Commerce's Calculation of Kukje's Review-Specific Average Rate

Consolidated-Plaintiff Kukje alone contests Commerce's calculation of a 7.89 percent review-specific weighted-average rate applicable to Kukje.  Consol.-Pl.'s Br. at 2.  Kukje argues that the review-specific rate should reflect not the weighted average of the revised DOSCO rate and original HiSteel rate, but rather the weighted average of the revised DOSCO rate and a revised HiSteel rate calculated without PMS adjustments.  Id.  Kukje therefore requests that the court remand Commerce's calculation of the review-specific average rate for replacement with a 7.56

---

[8] Although Nucor's request that the court "reject the remand determination and affirm Commerce's original adjustment of costs" implicitly seeks reinstitution of the original AD rates, Nucor does not directly address the calculation of either DOSCO's weighted-average dumping margin or Kukje's review-specific average rate in its comments.  Def.-Inter.'s Br. at 19.  Accordingly, the court does not consider arguments from Nucor on either re-calculated AD rate.

percent rate reflecting revisions to both the DOSCO and HiSteel AD rates. Id. at 2, 4; see also Draft Results of Redetermination Pursuant to Court Remand at 5 (Dep't Commerce Nov. 23, 2020), P.R.R. 1 (calculating a 7.56 percent review-specific average rate for Kukje where both DOSCO and HiSteel's AD rates are revised to exclude the PMS adjustment). The Government argues that Commerce properly declined to recalculate HiSteel's rate in its final remand determination because HiSteel itself did not participate in this litigation "and no party challenged HiSteel's rate." Def.'s Br. at 7 (citing Remand Results at 2). Accordingly, the Government contends that Commerce properly calculated a 7.89 percent review-specific weighted-average rate with respect to Kukje and requests that the court affirm Commerce's Final Results.

Commerce properly declined to recalculate HiSteel's weighted-average dumping margin to reflect the absence of a PMS on remand. The court has established, and the parties do not dispute, that a non-participant in litigation challenging Commerce's final determination is not entitled to revised rates calculated on remand. Capella Sales & Servs. Ltd. v. United States, 40 CIT __, __, 180 F. Supp. 3d 1293, 1304–05 (2016), aff'd by 878 F.3d 1329 (Fed. Cir. 2018); and Capella Sales & Servs. Ltd. v. United States, 40 CIT __, __, 181 F. Supp. 3d 1255, 1262–64 (2016), aff'd by 878 F.3d 1329 (Fed. Cir. 2018); see also Consol.-Pl.'s Br. at 3; Def.'s Br. at 6–7. Commerce therefore acted in accordance with law by determining that it would not "recalculate[] the weighted-average dumping margin for HiSteel" in its Final Results, "because HiSteel did not participate in the litigation and is therefore not entitled to the benefit of the recalculation." Remand Results at 4 (citation omitted).

Thus, given HiSteel's non-participation, Commerce's calculation of a 7.89 percent review-specific rate for Kukje was in accordance with law and supported by substantial evidence. Under 19 U.S.C. § 1673d(c)(5)(A), the all-others rate applicable to Kukje consists of the "weighted

average of the estimated weighted average dumping margins established for exporters and producers individually investigated, excluding any zero or de minimis margins, and any margins determined entirely under [19 U.S.C. § 1677e]." Neither Kukje nor the Government disputes that Commerce correctly applied a revised 11.00 percent AD rate to DOSCO and the original 4.74 percent AD rate to HiSteel on remand. Consol.-Pl.'s Br. at 3; Def.'s Br. at 6–7. The statute requires that Commerce apply a review-specific rate to Kukje consisting of the weighted average of DOSCO's uncontested 11.00 percent rate and HiSteel's uncontested 4.74 percent rate. 19 U.S.C. § 1673d(c)(5)(A). This is in fact what Commerce did. Remand Results at 4, 7; Mem. from Alice Maldonado to File, re: Calculation of the Review-Specific Average Rate for the Final Results of Redetermination at 3 (Dep't Commerce Dec. 21, 2020) P.R.R. 9. Thus, the court concludes that Commerce acted in accordance with law and with the support of substantial evidence in assigning a 7.98 percent review-specific rate to Kukje.

Nor is the court convinced by Kukje's argument that its own participation in the litigation entitles it to receive not only the benefit of DOSCO's recalculated AD rate but also the benefit of a theoretical recalculated HiSteel rate reflecting the exclusion of Commerce's PMS adjustment. Consol.-Pl.'s Br. at 3. As the Government notes, Kukje did not explicitly request that the court review HiSteel's AD rate in its complaint, or in its opening brief. Def.'s Br. at 9 (citing Kukje's Compl. at 10; Kukje's Mot. for J. on Agency R., Nov. 6, 2019, ECF No. 38 ("Consol.-Pl.'s Rule 56.2 Br.")). Indeed, Kukje mentioned HiSteel only once in its opening brief, identifying it as a mandatory respondent. Consol.-Pl.'s Rule 56.2 Br. at 3. Rather than arguing for the recalculation of HiSteel's AD rate, Kukje stated that "[b]ecause Commerce's calculation of the final [AD] duty rate assigned to DOSCO was unsupported by substantial evidence and otherwise not in accordance with law, Commerce's calculation of the review-specific average rate assigned to Kukje Steel . . .

likewise was unsupported by substantial evidence and otherwise not in accordance with law," id. at 5, and requested only that the court extend to Kukje "any relief granted to DOSCO as a result of this appeal," id. at 3. As the court has previously indicated, "[i]t is axiomatic that any claim which is not pressed is deemed abandoned." De Laval Separator Co. v. United States, 1 CIT 144, 146, 511 F. Supp. 810, 812 (1981); see also Timken Co. v. United States, 26 CIT 1072, 1073 n.2, 240 F. Supp. 2d 1228, 1231 n.2 (2002) (rejecting party's attempt to proffer arguments outside the scope of its Rule 56.2 motion); Novosteel SA v. United States, 284 F.3d 1261, 1274 (Fed. Cir. 2002) (finding that a party waived its argument by failing to present the argument in its principal summary judgment brief). Consequently, the court finds that Kukje's argument for the adjustment of HiSteel's AD rate has been waived and affirms Commerce's assignment of a 7.98 percent review-specific rate to Kukje on remand.

## CONCLUSION

For the reasons stated, the court affirms Commerce's Remand Results. Judgment will enter accordingly in favor of Defendant.

**SO ORDERED.**

/s/      *Gary S. Katzmann*
             Judge

Dated: June 24, 2021
         New York, New York